﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 180806-203
DATE: September 30, 2020

ORDER

Service connection for lumbar spine arthritis and intervertebral disc syndrome (IVDS) with associated left lower extremity radiculopathy is granted. 

Entitlement to temporary total ratings under 38 C.F.R. § 4.30 for periods of convalescence following service-connected low back surgeries on January 20, 2016 and February 16, 2017 are granted. 

FINDINGS OF FACT

1. The Veteran has lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy that began after a September 2006 training injury during her active military service in the U.S. Army. 

2. The Veteran’s low back surgical procedures conducted on January 20, 2016 and on February 16, 2017, respectively, necessitated periods of convalescence of at least one month following each surgery. 

CONCLUSIONS OF LAW

1. The criteria have been met for service connection for lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria have been met for entitlement to temporary total ratings under 38 C.F.R. § 4.30 for periods of convalescence following service-connected low back surgeries on January 20, 2016 and February 16, 2017. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.30.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from January 1986 to January 1990 in the U.S. Air Force and from April 2005 to April 2008 in the U.S. Army.

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a June 2017, September 2017, and December 2017 rating decisions issued by an Agency of Original Jurisdiction (AOJ) of the Department of Veterans Affairs (VA). These rating decisions were issued under the previous legacy system. 

However, on March 30, 2018, the Veteran opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a Rapid Appeals Modernization Program (RAMP) opt-in election form. See 38 C.F.R. § 3.2400(c)(1) (2019). On this form, he selected the higher-level review (HLR) lane.

The AOJ followed up by issuing a July 2018 RAMP / HLR rating decision. Thereafter, the Veteran appealed to the Board by filing an August 2018 RAMP Selection Form, in which he selected the Hearing Lane. See 38 C.F.R. §§ 20.300, 20.302 (2019). Since the Hearing Lane has been selected, the Board may only consider the evidence of record at the time of the March 30, 2018 RAMP opt-in election form; evidence submitted by the Veteran or her representative at the August 2019 hearing; and finally, any evidence submitted by the Veteran or her representative within 90 days following the August 2019 hearing. 38 C.F.R. § 20.302(a). In fact, on the day of the August 22, 2019 hearing, the Veteran submitted two buddy statements from fellow service members within the 90 day evidentiary window discussed above. See 38 C.F.R. § 20.302(a)(3). As such, these buddy statements are timely and can be considered by the Board. 

As mentioned above, in August 2019, the Veteran and her spouse presented testimony at a Board videoconference hearing before the undersigned Acting Veterans Law Judge (AVLJ). A transcript of that hearing is associated with the Veteran’s claims file. 

I. Service Connection for Lumbar Spine and Left LE Radiculopathy

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service — the “nexus” requirement. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

VA is to give “due consideration” to “all pertinent medical and lay evidence” in evaluating a claim for disability benefits. 38 U.S.C. § 1154(a). Thus, there is no categorical rule that medical evidence is required when the determinative issue is either medical etiology or a medical nexus. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

The Board should make explicit findings regarding the competency and, if necessary, the credibility of the lay evidence of record. Miller v Wilkie, 32 Vet. App. 249, 257-262 (2020). Lay testimony is competent to describe the presence of readily observable features or symptoms of injury or illness that are not medical in nature, such as varicose veins, tinnitus, and flat feet. See 38 C.F.R. § 3.159(a)(2); Barr v. Nicholson, 21 Vet. App. 303, 307-310 (2007). The Federal Circuit has also clarified that lay evidence can be competent for the diagnosis or etiology of a condition if: (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). And if the disability is of the type for which lay evidence is competent, the Board must weigh the probative value of that lay evidence against other evidence of record in making its determination regarding the award of service connection. Buchanan v. Nicholson, 451 F.3d 1331, 1334-37 (Fed. Cir. 2006).

In determining whether service connection is warranted, the Board shall consider the benefit-of-the-doubt doctrine. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Alemany v. Brown, 9 Vet. App. 518 (1996); Gilbert v. Derwinski, 1 Vet. App. 49 (1991).

The Veteran dates the onset of her current lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy to an in-service injury to the low back for which her service treatment records (STRs) document treatment. Specifically, in September 2006 during Combat Medic Advanced Skills Training (CMAST), she lifted a heavy mannequin overhead while on an obstacle course under simulated fire. She felt a “pop” with immediate pain radiating down her low back into her left leg and left foot. Post-service, beginning immediately in 2008, she continued to receive treatment for her low back and left lower extremity, including physical therapy and pain medications. Over time, her condition worsened until she was diagnosed with a herniated disc in the low back in 2012. She has undergone two surgeries for her low back in 2016 and 2017 through the VA Choice Program. Post-service, she denies any intercurrent injury to her low back. She has submitted buddy statements from fellow service members who noticed that after her September 2006 in-service injury, her low back condition began to cause significant functional limitations for her. See August 22, 2019 Board videoconference hearing testimony; August 22, 2019 buddy statements from fellow service members (P.M.K. and M.L.). 

At the outset, the Board sees the Veteran is already service-connected for a lumbar spine sprain stemming from the September 2016 in-service injury. She has been assigned a 20 percent rating for this disability under Diagnostic Code 5237 (lumbosacral strain). See 38 C.F.R. § 4.71a. However, she is requesting an additional award of service connection for low back disc herniation and left leg radiculopathy that she believes is also directly caused by the in-service injury. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (stating that, when determining the scope of a claim, the Board must consider the claimant’s description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of that claim). 

Upon review of the evidence, service connection for lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy is granted.

The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C. § 1110; 38 C.F.R. § 3.303; see Degmetich v. Brown, 104 F. 3d 1328, 1332 (1997). In the present case, there is probative evidence that the Veteran meets this threshold criterion for service connection. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000). That is, the Veteran has been diagnosed with multilevel lumbar spine arthritis, spondylosis, IVDS, an L4-L5 disc herniation, and a lumbosacral sprain. In addition, left lower extremity (L5) radiculopathy has been assessed as secondary to the L4-L5 disc herniation. See September 2012, August 2015, January 2016, and September 2016 MRIs of the lumbar spine; June 2017 VA thoracolumbar spine examination. The Veteran has been taking pain medications for her lumbar spine for many years. She has undergone two surgeries. Thus, it is undisputed the Veteran has current lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy. 

The remaining question is whether symptomatology from her current lumbar spine disorder first manifested during active service, within one year of separation of service, or is otherwise related to an event, injury, or incident during her second period of active service in the Army from 2005 to 2008. 

Initially, the Veteran’s lumbar spine multilevel arthritis diagnosed throughout the record in the present case is an enumerated “chronic disease” listed under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) applies. Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. 2013). See also Greyzck v. West, 12 Vet. App. 288, 291 (1999) (recognizing Stedman’s Medical Dictionary 9, 1267 (26th ed. 1995) for the proposition that “degenerative joint disease” and “degenerative arthritis” are forms of arthritis subject to presumptive service connection). Under 38 C.F.R. § 3.303(b), where the evidence shows an enumerated “chronic disease” in service (or within the presumptive period under § 3.307), or “continuity of symptoms” of such a disease after service, the disease shall be presumed to have been incurred in service. Walker, 708 F.3d 1335-1337. Service connection for certain enumerated diseases, such as lumbar spine arthritis, may be also be established on a presumptive basis by showing that it manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

Furthermore, the same chronic disease rule applies to the Veteran’s radiculopathy of the left lower extremity. Radiculopathy is any pathological condition of the nerve roots. Kellar v. Brown, 6 Vet. App. 157, 161 (1994). Although not specifically enumerated under 38 C.F.R. § 3.309(a), radiculitis or radiculopathy qualifies as a “chronic disease” for purposes of establishing presumptive service connection under 38 C.F.R. § 3.309(a), because “other organic diseases of the nervous system” includes any commonly recognized neurological disease (such as may be found in a valid contemporary medical treatise). 

As to the second requirement of in-service incurrence, STRs dated in September 2006 document treatment for a lumbar strain and radicular / sciatica symptoms after an injury sustained during combat medic training on the obstable course when she lifted a heavy 250-pound mannequin. She felt tingling in her left foot. She was given pain medications. Moreover, she was treated for low back pain in additional STR treatment notes dated in October 2006, November 2006, April 2007, and November 2007. At times left foot numbness was documented and sciatica was assessed. At her February 2008 STR report of medical history at separation, the Veteran reported recurrent back pain and numbness and tingling (radiculopathy) down the left leg into the left foot. But upon examination at separation, her lumbar spine was deemed normal. At an April 2008 pre-discharge STR QTC examination, the Veteran reported low back pain for several years, which worsened with field trainings. The Veteran again reported left foot numbness and left leg radiculopathy from her buttocks down to her foot. This was described as sciatic pain. The low back pain was intermittent but could last for weeks ever since her 2006 injury. The diagnosis was lumbar sprain at this April 2004 pre-discharge examination. X-rays during service from 2005 to 2008 did not assess low back arthritis or disc disease. In any event, STRs provide strong evidence in support of the existence of a low back injury with continuing symptomatology with radicular / sciatic pain radiating to the left lower extremity during active duty. See 38 C.F.R. § 3.303(a). 

However, it follows that under 38 C.F.R. § 3.303(b), this case does not meet the test for “chronic disease” as set forth in lieu of a medical nexus. Although arthritis and radiculopathy are both an enumerated “chronic disease” under 38 C.F.R. § 3.309(a) (listing named chronic diseases), neither in the present case is “shown” in service or within one year of separation from service. For the “showing” of chronic disease in service or within one year of service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic.” 38 C.F.R. § 3.303(b). No such manifestations of low back arthritis or radiculopathy are shown during service or within one year of service in the instant case. 

Regardless, continuity of symptomatology after separation can be established where a condition “noted” during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned, i.e., “when the fact of chronicity in service is not adequately supported.” 38 C.F.R. § 3.303(b). See also Walker, 708 F.3d at 1339-40. For chronic diseases listed in 38 C.F.R. § 3.309(a)—such as lumbar spine arthritis and radiculopathy —service connection may also be established by showing continuity of symptoms, which requires a claimant to demonstrate (1) that a condition was “noted” during service; (2) evidence of post-service continuity of symptoms; and (3) medical or, in certain circumstances, lay evidence of a link between the present disability and the post-service symptoms. 38 C.F.R. § 3.303(b) (2017); see Walker, 708 F.3d at 1340 (Fed. Cir. 2013) (holding that only those chronic diseases listed in 38 C.F.R. § 3.309 are subject to service connection by continuity of symptoms described in § 3.303(b).

In the present case, there is enough evidence of record indicative but not dispositive of the onset of arthritic and radicular conditions “noted” during service for purposes of establishing continuity of symptomatology. Id. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed. 38 C.F.R. § 3.303(b). See again Walker, 708 F.3d at 1339-40. In this regard, post-service, the totality of the evidence establishes continuity of symptomatology of lumbar spine arthritis and IVDS with left lower extremity radiculopathy since service. 38 C.F.R. § 3.303(b). Specifically, VA primary care and ER records dated from 2010 to 2012, only a few years after separation from service, documented treatment for “degenerative disc disease” and “disc herniation” of the lumbar spine with radiculopathy and sciatica diagnosed for the left lower extremity. “Flare-ups” and ER care for the low back was necessary on multiple occasions from 2010 to 2012. By the year 2012, MRIs confirmed low back arthritis and degenerative disc disease with L5 radiculopathy. A course of physical therapy did not provide sufficient alleviation of symptoms. Therefore, the Veteran underwent two surgeries for her low back with private orthopedic surgeons participating in the VA Choice Program: (1) a January 20, 2016 left L4-L5 microdiscectomy due to disc herniation at L4-L5 with left leg radiculopathy secondary to left L4-L5 disc herniation; and (2) a February 16, 2017 left L4-L5 revision discectomy and foraminotomy due to recurrent left leg radiculopathy secondary to recurrent left-sided L4-5 disc herniation.

In light of the above evidence, the Board finds that low back arthritic and radicular conditions were effectively “noted” during service, with probative evidence of post-service continuity of symptoms from 2010 and thereafter. See 38 C.F.R. § 3.303(b); Walker, 708 F.3d at 1336. The low back and radicular symptomatology both in-service and post-service was documented to be continuous and persistent in nature. 

Post-service, as to the third requirement of a nexus, the claims file contains a mix of favorable and unfavorable medical opinions on whether there is a nexus or link between the Veteran’s current lumbar spine arthritis and IVDS with radiculopathy and her documented in-service low back injury and treatment. Holton, 557 F.3d at 1366. See also 38 C.F.R. § 3.303(a), (d). 

With regard to the favorable evidence, the Board has considered an August 2017 private medical opinion from an orthopedic spine surgeon (Dr. E.P.C., MD.) This private surgeon performed both of the Veteran’s low back surgeries. As such, he was quite familiar with the details and case history of the Veteran’s low back and radicular disabilities. In addition, a March 2018 private medical opinion was also submitted from another orthopedic spine surgeon (Dr. C.E.B., MD.). Both private physicians reviewed and discussed the Veteran’s relevant in-service and post-service treatment records. Dr. E.P.C. assessed that as a fellowship trained spine surgeon, the September 2006 STR treatment notes of increased low back pain with left leg pain clearly demonstrate evidence of radiculopathy. Dr. E.P.C. added that throughout the Veteran’s medical records her low back pain is clearly associated with left leg pain. And as early as 2011 she had “impingement of the left L5 nerve root.” Her medical records indicate that her initial complaints following the in-service September 2006 combat course were consistent with radiculopathy, and that this injury persisted and worsened over time. Additionally, her low back condition was improperly assessed as only a lumbar strain in her STRs, when in reality there was a herniated disc issue. In a March 2018 private opinion, Dr. C.E.B. agreed with this conclusion. Both private physician opinions provide clear, probative evidence in support of the Veteran’s low back and radiculopathy claim. 

Conversely, with regard to the negative evidence, the Board has considered the unfavorable opinions of the same VA physician assistant examiner, dated in April 2017, June 2017, and February 2018. This VA physician assistant opined that the Veteran’s lumbar spine herniated disc and associated radiculopathy was not caused by the confirmed in-service injury to the lumbar spine. This VA physician assistant reviewed the claims file and online medical resources. Her rationale was that there is no pathoanatomic evidence that lumbar sprains cause lumbar disc herniations. She remarked that the Veteran’s radiculopathy and IVDS began in 2012, four years after separation from active duty. She surmised that the Veteran’s subjective complaints alone were not sufficient enough to establish the existence of a diagnosis or an “undiagnosed condition” in 2006 during active duty. 

The probative value of medical opinion evidence is based on the medical expert’s personal examination of the patient, the physician’s knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician’s access to the claims folder and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000); Nieves-Rodriguez, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also, a VA examiner must consider the Veteran’s relevant lay statements regarding in-service incurrence and whether they are consistent or inconsistent with medical knowledge. Miller v Wilkie, 32 Vet. App. 249, 258-60 (2020). It is not error for the Board to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons or bases. See Owens v. Brown, 7 Vet. App. 429, 433 (1995).

The Board finds that the favorable private medical opinions from orthopedic surgeons outweigh the unfavorable VA opinions of record from a single physician assistant. The private medical opinions were proffered by orthopedic surgeons who operated on and treated the Veteran for her low back and radiculopathy conditions, whereas the VA opinions were proffered by a less specialized physician’s assistant who had not treated the Veteran before. See Sklar v. Brown, 5 Vet. App. 140, 146 (1993) (observing that a specialist’s opinion as to a medical matter outside of his or her specialty is given less probative weight). The favorable private medical opinions are also more persuasive in their rationales, as both in-service STRs and post-service VA treatment records and examinations document radicular / sciatic symptomatology to the left lower extremity. The favorable private medical opinions are buttressed by the Board’s finding that continuity of symptomatology of lumbar spine arthritis and IVDS with left lower extremity radiculopathy has been established since service. See 38 C.F.R. § 3.303(b). Thus, the Board places more probative weight on the favorable private medical opinions. 

Accordingly, resolving doubt in the Veteran’s favor, service connection for lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy is granted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

II. Temporary Total Rating Pursuant to 38 C.F.R. § 4.30

The Veteran is seeking temporary total disability ratings under 38 C.F.R. § 4.30 due to convalescence following two separate lumbar spine surgeries with private orthopedic surgeons participating in the VA Choice Program: (1) a January 20, 2016 left L4-L5 microdiscectomy; and (2) a February 16, 2017 left L4-L5 revision discectomy and foraminotomy.

A temporary total rating (100 percent) will be assigned when treatment of a service-connected disability results in: (1) Surgery necessitating at least one month of convalescence; (2) Surgery with severe postoperative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or (3) Immobilization by cast, without surgery, of one major joint or more. 38 C.F.R. § 4.30(a)(1), (2), and (3) (2019).

Temporary total disability ratings are to commence on the day of hospital admission and continue for a period of one to three months from the first day of the month following hospital discharge or outpatient release. Extensions of one to three months, beyond the initial three months, may be made under 38 C.F.R. § 4.30 (a)(1), (2), or (3). Extensions of one or more months up to six months beyond the initial six months period may be made only under 38 C.F.R. § 4.30(a)(2) or (3) upon the approval of the Veterans Service Center Manager. 38 C.F.R. § 4.30(b).

The term "convalescence" does not necessarily entail in-home recovery. Felden v. West, 11 Vet. App. 427, 430 (1998). Convalescence is defined as "the stage of recovery following an attack of disease, a surgical operation, or an injury." Id. at 430 (citing Dorland's Illustrated Medical Dictionary, p. 374 (28th ed. 1994)). The recovery has been defined as "the act of regaining or returning toward a normal or healthy state." Id. (citing Webster's Medical Desk Dictionary 606 (1986)). The purpose of a temporary total rating is to aid the appellant during the immediate post-surgical period when he or she may have incompletely healed wounds or may be wheelchair-bound, or when there may be similar circumstances indicative of transient incapacitation associated with recuperation from the immediate effects of an operation. See generally 38 C.F.R. § 4.30. Notations in the medical record as to the claimant's incapacity to work after surgery must be taken into account in the rating. Felden, 11 Vet. App. at 430.

The purpose of a temporary total rating is to aid the appellant during the immediate post-surgical period when he or she may have incompletely healed wounds or may be wheelchair-bound, or when there may be similar circumstances indicative of transient incapacitation associated with recuperation from the immediate effects of an operation. 38 C.F.R. § 4.30. The inability to return to any employment would, in fact, show a need for continuing convalescence under § 4.30. Seals v. Brown, 8 Vet. App. 291, 296-97 (1995).

However, a temporary total convalescent rating contemplates only a temporary period of time required by a veteran to recover from the immediate effects of surgery. See generally 38 C.F.R. § 4.30. Thereafter, any remaining chronic residual disability is evaluated under VA’s schedular criteria for that disability.

Initially, the fact that the Veteran underwent two lumbar spine surgeries on January 20, 2016 and February 16, 2017 is undisputed in this case. Rather, the AOJ previously denied the Veteran's temporary total ratings under 38 C.F.R. § 4.30 for convalescence as such surgical procedures were not related to a service-connected disability. That is, during the course of the appeal, the AOJ had denied the Veteran service connection for lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy. Both of the surgical procedures in question were scheduled to correct both her IVDS and left leg radiculopathy. The AOJ determined that both surgeries were therefore related to a nonservice-connected disability. 

In light of the present Board decision’s conclusion that service connection is warranted for the Veteran's lumbar spine arthritis and IVDS with associated left lower extremity radiculopathy, the Board finds that both of the Veteran’s lumbar spine surgical procedures on January 20, 2016 and on February 16, 2017 necessitated at least one month of convalescence. 38 C.F.R. § 4.30(a)(1). 

Accordingly, temporary total ratings under 38 C.F.R. § 4.30 for periods of convalescence following service-connected low back surgeries on January 20, 2016 and February 16, 2017 are granted. See 38 C.F.R. § 4.3. In reaching this favorable decision, the Board has considered the benefit of the doubt doctrine. 38 U.S.C. § 5107(b).

(On a side note, the Board declines at this time to set any specific dates of entitlement for the temporary total ratings under 38 C.F.R. § 4.30, instead deferring assignment of those convalescence periods to the AOJ in the first instance. Before implementing the award, the AOJ may want to contact the Veteran to inquire how long she was unable to work after each low back surgery).

 

 

J. NICHOLS

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board P.S. Rubin, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.